Joan Riley JAGER, Plaintiff—
Appellant,

v.

Jo Anne B. BARNHART, Defendant—
Appellee.

No. 04–35776.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 2006.

Filed June 14, 2006.

Elie Halpern & Associates, PS, Olympia, WA, for Plaintiff–Appellant.

David R. Johnson, Esq., Social Security Administration, Office of the General Counsel, Brian C. Kipnis, Esq., USSE— Office of the U.S. Attorney, Seattle, WA, for Defendant–Appellee.

Before: REINHARDT, McKEOWN, and CLIFTON, Circuit Judges.

MEMORANDUM *

Joan Jager appeals the district court's order affirming the Commissioner of the Social Security Administration's decision to deny her application for social security disability benefits. Because the parties are familiar with the facts, we recite here only those facts necessary to explain our decision. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand to the district court with instructions to remand to the Commissioner for further proceedings.

We review de novo the district court's order upholding the Commissioner's denial of benefits. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir.2003). We must affirm the Commissioner's decision if it is supported by substantial evidence and correctly applies the law. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir.2001).

## I. Rejection of Evidence

■ The ALJ improperly rejected the opinion of Dr. Ehly, Jager's treating physician for ten years. Dr. Ehly opined that since the onset of her illness, Jager has "never been able to return to full time work" and "her ability to perform in a competitive work situation is impaired." Disregarding Dr. Ehly's opinion, the ALJ relied on the opinions of Dr. Goldberg and Dr. Harris, the non-examining psychologists. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of ... a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir.1995).

Although the ALJ gave various reasons for rejecting Dr. Ehly's opinion, they are not "specific and legitimate reasons supported by substantial evidence in the record." *Id.* at 830 (internal quotations and citation omitted). For example, contrary to the ALJ's finding that Dr. Ehly's opinion was "not supported by contemporaneous notes or observations," the hospital discharge summary describes Jager's "6 months period of increased energy, sleep[less]-ness, acceleration of her thought processes, confusion, poor concentration ... [and] loss of control" caused by

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

her "bipolar affective disorder, acute manic type." In addition, although Dr. Ehly described Jager as being "partially stabilized" with medication, "[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability," and the ALJ must evaluate the claimant's ability to work on a *"sustained* basis." *Id.* at 833 (quoting 20 C.F.R. § 404.1512(a)). As noted by the district court, one of the ALJ's reasons for rejecting Dr. Ehly's opinion—his lack of expertise in vocational issues—is clearly not legitimate, because in addition to medical opinions, the ALJ must consider physicians' opinions regarding a claimant's ability to work. *Holohan,* 246 F.3d at 1202–03. Finally, the accomplishments annotated by Dr. Ehly are not "inconsistent with his conclusion" regarding Jager's ability to perform in a competitive work environment; Dr. Ehly noted the interference of Jager's symptoms with those activities, and many home activities are not easily transferable to a competitive work environment. *See Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989).

■ The ALJ also erred in giving no weight to the observations of Emily Schoenfelder, a mental health therapist who treated Jager for several years. Because therapists are "other sources" under 20 C.F.R. § 404.1513(d), the ALJ was entitled to accord Schoenfelder's opinion *"less* weight than opinions from acceptable medical sources." *Gomez v. Chater,* 74 F.3d 967, 970–71 (9th Cir.1996) (emphasis added). The ALJ's sole reason for giving *no* weight to Schoenfelder's observations was the fact that her treatment began after Jager's date last insured. But given the ongoing nature of Jager's disability, Schoenfelder's observations, like lay witness observations, would still be relevant to the issue of how Jager's "impairment affects [her] ability to work." *Dodrill v. Shalala,*

12 F.3d 915, 919 (9th Cir.1993) (quoting 20 C.F.R. § 404.1513(e)(2)). The ALJ did not err, however, in rejecting Nurse Bobbi Fletcher's observations for being "grossly exaggerated in light of [Jager's] own testimony of her current and past functioning."

■ The ALJ also failed to provide clear and convincing reasons for discrediting Jager's subjective complaints, notably, fatigue. Because Jager produced "medical evidence of an underlying impairment, the Commissioner may not discredit [her] testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester,* 81 F.3d at 834. Absent "affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* (internal quotations and citation omitted). In discrediting her testimony, the ALJ relied largely on Jager's ability to perform daily activities, including babysitting her nephews during the summer. However, these daily activities do not conflict with her claims of disability because she testified that fatigue and stress severely limited those activities, and she received babysitting assistance from her husband. *See Fair,* 885 F.2d at 603 ("[H]ome activities are not easily transferable to what may be the more grueling environment of the workplace"); *Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir.2004) (explaining that claimant's activities are "quite limited and carried out with difficulty").

■ The ALJ also improperly discredited the lay witness statements of Jager's husband, Leonard, and her sister, Adrienne Barbon. "[T]estimony from lay witnesses who see the claimant every day is of particular value." *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996). The ALJ must take lay testimony into account unless he provides reasons that are "germane to each witness whose testimony he re-

jects." *Id.* at 1288. The ALJ rejected Barbon's testimony as being "conclusory and anecdotal and pal[ing] in comparison with the few medical notes pertinent to the period at issue." Similarly, the ALJ rejected Leonard's statement because the ALJ found "no reason in the medical evidence to credit this." It is unclear what the rather general description of "conclusory and anecdotal" refers to in this context. The rejection of this testimony because "medical records did not corroborate her fatigue ... violates SSR 88–13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." *Id.* at 1289.

## II. Five–Step Sequential Analysis

■ The ALJ's step two determination that Jager did not have a severe impairment for a twelve-month period is not supported by substantial evidence. Step two is "a de minimis screening device [used] to dispose of groundless claims," and an impairment may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart,* 433 F.3d 683, 686–87 (9th Cir.2005) (quoting *Smolen,* 80 F.3d at 1290). Jager's impairment satisfies step two's de minimis threshold.

■ The ALJ's alternate step three and step five findings, as well as the residual functional capacity ("RFC") assessment,[1] were also based on the improper rejection of the evidence described in the previous section. This case does not, however, present the unusual situation where "it is

clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Smolen,* 80 F.3d at 1292. Thus, rather than remand for an award of benefits, we remand for further administrative proceedings to determine whether, in light of the newly-credited evidence, Jager is disabled. On remand, if the ALJ arrives at step five (i.e., if the ALJ concludes that Jager is not disabled at step three), then the ALJ should hear testimony from a vocational expert. *See Holohan,* 246 F.3d at 1208–09 (explaining that testimony from a vocational expert was necessary because claimant had a severe psychiatric, rather than physical, impairment).

REVERSED and REMANDED.

---

1. A claimant may be found "disabled" only at steps three and five. *See* 20 C.F.R. § 404.1520(a)(4). The RFC assessment is made before going from step three to step four. *Id.* The ALJ uses the RFC assessment at the fourth step to determine if claimant can

do her past relevant work, and at the fifth step to determine if claimant can adjust to other work. *Id.* Here, the ALJ determined at step four that Jager could not perform her past relevant work, a finding that is not disputed.